**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA**,

      Plaintiff,

  vs.                                                No. **CR 03-2281 MCA**

**TONY ORTIZ**, and
**ROBERT JUDE PADILLA**,

      Defendants,

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on the *Motion to Suppress Evidence Seized as a Fruit of Unlawful Arrest* [Doc. No. 61] filed by Defendants Tony Ortiz and Robert Jude Padilla on May 6, 2004. The Court held an evidentiary hearing on these Defendants' motion in Albuquerque, New Mexico, on June 9, 2004. Having fully considered the pleadings of record, the applicable law, the evidence and the arguments of counsel presented at the hearing, and being fully advised in the premises, the Court **DENIES** Defendants' motion based on the findings of fact and conclusions of law set forth below and at the hearing.

### I.    FINDINGS OF FACT

1.    There are four defendants in this case: Tony Ortiz, Robert Jude Padilla, Ronnie Espinosa, and Tony Swanson. The charges against each defendant arise from the same series of events that occurred on or about April 30, 2003, in Albuquerque, New Mexico.

2.      Albuquerque Police Department (APD) Officer Eugene Ethredge was on duty in Albuquerque, New Mexico, during the daytime hours on or about April 30, 2003, when the events described below occurred.

3.      Officer Ethredge was working with a confidential informant to set up an undercover "buy-bust" operation in which the officer would pose as a prospective buyer of approximately one pound (or one-half kilogram) of cocaine and, with the assistance of other officers, would arrest the prospective sellers when they appeared with the cocaine at the location where the transaction was to occur.

4.      Under Officer Ethredge's direction and supervision, the confidential informant engaged in a series of telephone conversations with Defendant Espinosa concerning the purchase of approximately one pound (or one-half kilogram) of cocaine.

5.      As a result of these telephone conversations, Officer Ethredge, the confidential informant, and Defendant Espinosa agreed to meet in the public parking lot of a shopping area in Albuquerque, New Mexico during the daytime hours on or about Saturday, April 30, 2003.

6.      During portions of the attempted drug transaction which later ensued, that location was videotaped by undercover police personnel stationed in another vehicle parked in the parking lot.

7.      Officer Ethredge and the confidential informant appeared at the designated location in a white pickup truck, parked in the public parking lot, and waited for Defendant Espinosa to arrive.

8.      Defendant Espinosa and Defendant Swanson subsequently appeared at the designated location in a brown four-door sedan and approached the white pickup truck in which Officer Ethredge and the confidential informant were sitting.

9.      The confidential informant conversed with Defendants Espinosa and Swanson, and Defendant Swanson was observed speaking on a cellular telephone.  The confidential informant then told Officer Ethredge that Defendants Espinosa and Swanson said they did not have the cocaine with them and that they would have to wait until it could be brought to their location.  Officer Ethredge and the confidential informant agreed to wait.

10.     Defendant Espinosa or Swanson asked Officer Ethredge and the confidential informant if they had the money, and Officer Ethredge stated that they did.  Defendants Espinosa and Swanson then entered a nearby store for a brief period.

11.     After exiting the store, Defendants Espinosa and Swanson returned to the parking lot and were observed speaking on their cellular telephone.  They waited there until a black Acura vehicle appeared in the parking lot and parked in a space behind the white pickup truck occupied by Officer Ethredge and the confidential informant.

12.     When the black Acura parked, Defendants Espinosa and Swanson approached it and conversed with its occupants.  At the same time, one of the occupants of the black Acura (later identified as Defendant Ortiz) exited the front passenger-side door and then entered the rear passenger-side door of the same vehicle.

13. After speaking with the occupants of the black Acura, Defendants Espinosa and Swanson approached the white pickup truck and spoke to the confidential informant and Officer Ethredge.

14. During this conversation, Defendant Espinosa or Swanson stated that they had the drugs and needed the money. They asked to see the money, and Officer Ethredge told them he would call for the money and it would be brought to that location soon.

15. Meanwhile, Officer Ethredge asked about the location of the cocaine (referenced in street terminology as "shit" or "the product"). In response to this line of questioning, Defendant Espinosa indicated that the cocaine was in the car and tried to assure Officer Ethredge that they were ready to complete the transaction if Officer Ethredge would provide them with the "buy" money. In this regard, Defendant Swanson offered to sit in the white pickup truck with the officer until the drugs arrived.

16. After this information was conveyed to Officer Ethredge and Defendants Espinosa and Swanson had walked back and forth between the white pickup truck and the black Acura several times, several undercover police vehicles and police officers dressed in tactical police uniforms descended on the parking lot and began to arrest Defendant Espinosa.

17. As soon as the police officers appeared to arrest Defendant Espinosa, the black Acura began to drive away from the scene.

18. A police vehicle made contact with the rear of the black Acura and thereby prevented the black Acura from leaving the scene.

19. Defendant Padilla, who had been driving the black Acura, then exited that vehicle and began to flee on foot while carrying a package underneath his arm.

20. Officers apprehended Defendant Padilla and later discovered that the package he was carrying contained cocaine.

21. Defendant Ortiz initially remained seated in the back seat of the black Acura.

22. Officer Ethredge approached the black Acura but initially could not see the interior of the vehicle because its windows were heavily tinted.

23. Upon opening the door of the vehicle, Officer Ethredge saw Defendant Ortiz in the back seat and directed him to show his hands and exit the vehicle.

24. When Defendant Ortiz initially glanced toward a handgun in plain view of the officer on the floorboard of the black Acura, Officer Ethredge pointed his weapon at Defendant Ortiz, whereupon Defendant Ortiz complied with Officer Ethredge's commands to exit the vehicle so that he could be placed under arrest.

25. Officer Ethredge testified that, based on his training and experience in undercover operations involving drug traffickers, traffickers who negotiate a relatively large drug transaction (such as that involving approximately one pound, or one-half kilogram, of cocaine) often carry weapons, travel in a vehicle that is separate from the vehicle in which the drugs are actually transported, and are assisted by other individuals in completing the transaction.

26. Based on the totality of the circumstances, the search and seizure of the black Acura and its occupants was supported by probable cause.

27.     Based on the totality of the circumstances, the searches of Defendants Padilla and Ortiz and the passenger compartment of the black Acura were valid searches incident to arrest and were supported by objective and reasonable concerns about officer safety.

## II.     LEGAL ANALYSIS AND CONCLUSIONS OF LAW

The central question raised in the motion to suppress filed by Defendants Padilla and Ortiz is whether the APD officers involved in the undercover "buy-bust" operation had probable cause to arrest them and to search their persons and the passenger compartment of the vehicle in which they were traveling at the time their vehicle was stopped. The Court answers this question in the affirmative with respect to both Defendants and the passenger compartment of the black Acura.

The Fourth Amendment to the United States Constitution protects Defendants' right to be secure in their persons and effects against unreasonable searches and seizures. "[A]utomobiles are 'effects' under the Fourth Amendment, and searches and seizures of automobiles are therefore subject to the constitutional standard of reasonableness." United States v. Chadwick, 433 U.S. 1, 12 (1977), overruled in part on other grounds, California v. Acevedo, 500 U.S. 565 (1991). In addition, "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of" the Fourth Amendment. Whren v. United States, 517 U.S. 806, 809-10 (1996). Thus, Defendants Padilla and Ortiz were seized within the meaning of the Fourth Amendment when they were stopped by the APD officers. See id.

These Defendants have standing to challenge the seizure of their respective persons regardless of their possessory interest or property interest in the vehicle in which they were traveling, see United States v. Shareef, 100 F.3d 1491, 1500 (10th Cir. 1996), and it is the Government's burden to show that the seizure was reasonable, see United States v. Maestas, 2 F.3d 1485, 1491 (10th Cir. 1993). If the Government cannot meet this burden, then the evidence obtained as a result of the seizure must be suppressed unless it was obtained by "means sufficiently distinguishable to be purged of the primary taint" of the unlawful seizure. Wong Sun v. United States, 371 U.S. 471, 487-88 (1963); see United States v. Erwin, 875 F.2d 268, 269 n.2 (10th Cir. 1989).

The officers who stopped the black Acura and its occupants (Defendants Padilla and Ortiz) had a reasonable, articulable suspicion that criminal activity was afoot at the time of the stop. See United States v. Melendez-Garcia, 28 F.3d 1046, 1051 (10th Cir. 1994). Nevertheless, the Government still has the burden of proving that any seizures it seeks to justify solely on the basis of reasonable suspicion were "'sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.'" United States v. Perdue, 8 F.3d 1455, 1462 (10th Cir. 1993) (quoting Florida v. Royer, 460 U.S. 491, 500 (1983)). "[T]he use of firearms, handcuffs, and other forceful techniques" does not always fall within the limited scope of such an investigative detention based on reasonable suspicion. Melendez-Garcia, 28 F.3d at 1052; see generally United States v. Holt, 264 F.3d 1215, 1220-26, 1228-30 (10th Cir. 2001) (en banc).

In this case, APD officers used forceful techniques to make contact with the black Acura and apprehend Defendants Padilla and Ortiz.  While the Government has presented some evidence to show why the use of such a procedure in this instance was warranted by objective concerns about officer safety, the Court concludes that these seizures were not justified by reasonable suspicion alone and must instead be treated as full custodial arrests conducted without a warrant.  See Melendez-Garcia, 28 F.3d at 1053; United States v. Edwards, 242 F.3d 928, 934 (10th Cir. 2001).

Generally, a full custodial arrest conducted without a warrant in a public place requires probable cause.  See United States v. Morris, 247 F.3d 1080, 1088 (10th Cir. 2001); United States v. Vazquez-Pulido, 155 F.3d 1213, 1216 (10th Cir. 1998).  Under the "automobile exception" to the Fourth Amendment's warrant requirement, "police officers who have probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant."  Florida v. Meyers, 466 U.S. 380, 381 (1984) (per curiam); accord United States v. Sparks, 291 F.3d 683, 690 (10th Cir. 2002).  The "automobile exception" also allows police officers to arrest the occupants of a vehicle based on a showing of probable cause.  See United States v. Klinginsmith, 25 F.3d 1507, 1509 (10th Cir. 1994).

"An officer has probable cause to arrest if, under the totality of the circumstances, he 'learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested.'"  Morris, 247 F.3d at 1088 (quoting Vazquez-Pulido, 155 F.3d at 1216).

This standard requires more than a mere suspicion, see id., but "'does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction.'"  United States v. Pollack, 895 F.2d 686, 691 (10th Cir. 1990) (quoting Adams v. Williams, 407 U.S. 143, 148-49 (1972)).  Indeed, "[t]he fact that the police did not, at the time of arrest, know exactly what crime had occurred is not relevant, so long as they had probable cause to believe '*an* offense' had been committed."  Edwards, 242 F.3d at 935 (quoting United States v. Maher, 919 F.2d 1482, 1485 (10th Cir. 1990)).

"'[O]fficers may conduct a warrantless search of a person when it is incident to a lawful arrest of that person.'"  United States v. McKissick, 204 F.3d 1282, 1296 (10th Cir. 2000) (quoting United States v. Anchondo, 156 F.3d 1043, 1045 (10th Cir. 1998)).  "Such a search is not limited to a frisk for weapons, but may have as its purpose a search for evidence of a crime."  Id.  "'[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may [also], as a contemporaneous incident of that arrest, search the passenger compartment of that automobile' and 'examine the contents of any containers found within the passenger compartment.'"  United States v. Olguin-Rivera, 168 F.3d 1203, 1205 (10th Cir. 1999) (quoting New York v. Belton, 453 U.S. 454, 460 (1981)).  Thus, if law enforcement personnel have probable cause to arrest a suspect, and the arrest occurs in the context of stopping a vehicle, then a contemporaneous search of the suspect's person, the passenger compartment of the suspect's vehicle, and any containers found within the passenger compartment is also justified.

Considering the totality of the circumstances at the time the black Acura was stopped in the parking lot of the shopping area, the Court concludes that the seizure of Defendant Padilla and the contemporaneous search of his person (revealing the package of cocaine), as well as the seizure of Defendant Ortiz and the contemporaneous search of the passenger compartment (revealing the handgun), were supported by probable cause to believe that these Defendants possessed with intent to distribute approximately one pound or one-half kilogram of cocaine or were involved in a conspiracy regarding the sale of such a quantity of cocaine. At the time of these arrests, the APD officers involved in the undercover operation were aware that a series of telephone calls had been made by a confidential informant to arrange for the sale of this amount of cocaine. The appearance of Defendants Espinosa and Swanson at the designated location, and the subsequent conversations among these Defendants, the confidential informant, and Officer Ethredge at that location served to corroborate the confidential informant's representations that he had, in fact, arranged for a drug transaction to take place at that location during that time period. Further, the manner in which Defendants Espinosa and Swanson interacted with the black Acura which later appeared at the scene was consistent with the common method of conducting relatively large illegal drug transactions that Officer Ethredge had observed in his past experiences with undercover operations. Thus, Officer Ethredge had reason to believe that the information conveyed by the confidential informant and Defendants Espinosa and Swanson was trustworthy.

Defendants make much of the fact that Officer Ethredge did not know that a black Acura would arrive at the scene, and did not know the identities of the occupants of the black

Acura, at the time of his initial contact with Defendants Espinosa and Swanson. But this lack of knowledge does not destroy the officer's probable cause in this instance because prior to the arrest, Officer Ethredge heard Defendant Espinosa indicate that the cocaine was in the car, and the officers observed Defendants Espinosa and Swanson interact with the occupants of the black Acura in a manner that supports a reasonable inference that these two Defendants were working in tandem with the occupants of the black Acura to complete the drug transaction. Hence, the law enforcement officers involved in the undercover operation were not relying on Defendants Espinosa and Swanson's mere proximity to the black Acura to justify these arrests. See Vazquez-Pulido, 155 F.3d at 1216-17. Although the videotape shows that other vehicles were in proximity to the black Acura and the white pickup truck while they were in the parking lot area, the black Acura was readily distinguishable from the other vehicles in the area based on the following observations.

     First, both the timing of the black Acura's arrival at the parking lot, as well as the manner in which Defendants Espinosa and Swanson approached the black Acura upon its arrival, were consistent with their prior conversations with the confidential informant and Officer Ethredge about waiting for the drugs to arrive. Second, none of the occupants in the black Acura ever exited that vehicle while it was parked in the parking lot to conduct normal business such as entering one of the stores in the area to shop. Third, Defendants Espinosa and Swanson made several representations that the cocaine was located nearby, even offering to sit in Officer Ethredge's vehicle until it was delivered. Fourth, based on the officer's training and experience, it was common for drug traffickers dealing in relatively large

quantities (such as one pound or one-half kilogram of cocaine) to conduct their transactions using more than one vehicle. Finally, the black Acura attempted to flee the scene as soon as the undercover officers moved in and began to arrest Defendant Espinosa.

Based on the totality of the circumstances, the officers and agents involved in the undercover operation could reasonably infer that when Defendants Espinosa or Swanson told Officer Ethredge that they had the drugs in the car and that they were ready to complete the drug transaction upon receiving the "buy" money, they probably meant that the drugs were in the black Acura as opposed to some other vehicle or location in the parking lot. See id. Accordingly, the officers had probable cause to search and seize the black Acura and its occupants. Based on the presence of probable cause and the officers' concomitant authority to conduct a warrantless search incident to arrest, this search and seizure was not unreasonable within the meaning of the Fourth Amendment, and there is no basis for suppressing the evidence resulting therefrom.

### III.    CONCLUSION

For the foregoing reasons and those stated at the hearing, the motion to suppress filed by Defendants Padilla and Ortiz is denied.

**IT IS, THEREFORE, ORDERED** that the *Motion to Suppress Evidence Seized as a Fruit of Unlawful Arrest* [Doc. No. 61] is **DENIED**.

**SO ORDERED** this 28th day of June, 2004, in Albuquerque, New Mexico.

 

**M. CHRISTINA ARMIJO**
United States District Judge